# 25-2612

## United States Court of Appeals for the Second Circuit

JOHN DOE,
*Petitioner*,

v.

UNITED STATES SECURITIES & EXCHANGE COMMISSION,
*Respondent*.

On Petition for Review of an Order of the United States Securities and Exchange Commission, Rel. No. 104139, File No. 2025-58

**OPENING BRIEF FOR PETITIONER JOHN DOE**

JORDAN A. THOMAS
SEC Whistleblower Advocates PLLC
3101 Wilson Boulevard, Suite 500
Arlington, VA 22201
(202) 746-9314
JThomas@secadvocates.com

J. MICHAEL CONNOLLY
*Counsel of Record*
STEVEN C. BEGAKIS
MARIE E. SAYER
PETER J. ALLEVATO
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
mari@consovoymccarthy.com
peter@consovoymccarthy.com

April 13, 2026

*Counsel for Petitioner*

## CORPORATE DISCLOSURE STATEMENT

[redacted] is an individual. [redacted] no parent corporation, and no publicly held corporation owns 10% or more [redacted].

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

Petitioner requests oral argument.

# TABLE OF CONTENTS

Corporate Disclosure Statement ..... ii

Statement with Respect to Oral Argument ..... ii

Table of Authorities ..... iv

Introduction ..... 1

Jurisdictional Statement ..... 5

Statement of the Issue ..... 5

Statement of the Case ..... 5

A. The Dodd-Frank Act and the SEC's Whistleblower Program ..... 5

B. The Commission's Practice of Imposing Monetary Sanctions That Are "Deemed Satisfied" by Earlier Disgorgements. ..... 8

C. The Securities Violations [redacted] ..... 10

D. [redacted] Whistleblowing ..... 12

E. The SEC's Investigation [redacted] ..... 13

F. Proceedings Below ..... 16

Summary of Argument ..... 19

Standard of Review ..... 22

Argument ..... 23

I. The Commission failed to treat similarly situated whistleblowers alike or provide a relevant distinction for acting differently. ..... 24

II. The Commission failed to consider and address [redacted] exemption was in the public interest and consistent with the protection of investors. ..... 29

III. The Commission failed to consider the mandatory factors for issuing an exemption. ..... 40

IV. The Commission's reasoning neither addressed [redacted] nor provided a satisfactory explanation for the agency's action. ..... 41

Conclusion ..... 48

Certificate of Compliance ..... 49

Certificate of Service ..... 49

## TABLE OF AUTHORITIES

### Cases

*Amerijet Int'l, Inc. v. Pistole*,
753 F.3d 1343 (D.C. Cir. 2014) ........ 47

*API v. SEC*,
953 F. Supp. 2d 5 (D.D.C. 2013) ........ 46

*Balt. Gas & Elec. Co. v. FERC*,
954 F.3d 279 (D.C. Cir. 2020) ........ 23, 42

*BNSF Ry. Co. v. Fed. R.R. Admin.*,
62 F.4th 905 (5th Cir. 2023) ........ 40

*Carlson v. Postal Regul. Comm'n*,
938 F.3d 337 (D.C. Cir. 2019) ........ 23, 29, 40

*Cboe Futures Exch., LLC v. SEC*,
77 F.4th 971 (D.C. Cir. 2023) ........ 40, 41

*Christopher v. SmithKline Beecham Corp.*,
567 U.S. 142 (2012) ........ 23

*Citizens United v. Schneiderman*,
882 F.3d 374 (2d Cir. 2018) ........ 31

*Colo. Interstate Gas Co. v. FERC*,
850 F.2d 769 (D.C. Cir. 1988) ........ 24

*Digit. Realty Tr., Inc. v. Somers*,
583 U.S. 149 (2018) ........ 7, 31

*Encino Motorcars LLC v. Navarro*,
579 U.S. 211 (2016) ........ 47

*Evergreen Shipping Agency v. Fed. Mar. Comm'n*,
106 F.4th 1113 (D.C. Cir. 2024) ........ 23, 29, 40, 42

*Home Box Office, Inc. v. FCC*,
567 F.2d 9 (D.C. Cir. 1977) ........ 29

*In re ABB Ltd.*,
Rel. No. 34-96444 (Dec. 3, 2022) ........ 8, 9, 24

*In re Apollo Mgmt. V, LP*,
Rel. No. 40-4493 (Aug. 23, 2016) ........ 27

*In re Barclays PLC*,
Rel. No. 34-95944 (Sept. 29, 2022) ........................................ 9, 26

*In re Blackstreet Cap. Mgmt., LLC*,
Rel. No. 34-77959 (June 1, 2016) ........................................ 27

*In re Gaia, Inc.*,
Rel. No. 34-97548 (May 23, 2023) ........................................ 36

*In re Insight Venture Management, LLC*,
Rel. No. 40-6332 (June 20, 2023) ........................................ 25

*In re KBR, Inc.*,
Rel. No. 34-74619 (Apr. 1, 2015) ........................................ 34

*In re Monolith Res., LLC*,
Rel. No. 34-98322 (Sept. 8, 2023) ........................................ 34

*In re NB Alts. Advisers LLC*,
Rel. No. 40-5079 (Dec. 17, 2018) ........................................ 27

*In re Roadrunner Transp. Sys., Inc.*,
Rel. No. 34-96909 (Feb. 14, 2023) ........................................ 8, 24

*In re UBS Financial Services, Inc.*,
Rel. No. 34-95168 (June 29, 2022) ........................................ 27

*Kilgour v. SEC*,
942 F.3d 113 (2d Cir. 2019) ........................................ 23

*Kisor v. Wilkie*,
588 U.S. 558 (2019) ........................................ 23

*Liu v. SEC*,
591 U.S. 71 (2020) ........................................ 28

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........................................ 23

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ........................................ 20, 22, 29, 42

*Nat. Res. Def. Council v. EPA*,
658 F.3d 200 (2d Cir. 2011) ........................................ 22

*New Eng. Power Generators Ass'n v. FERC*,
881 F.3d 202 (D.C. Cir. 2018) ........................................ 29

*Orange Park Florida TV, Inc. v. FCC*,
811 F.2d 664 (D.C. Cir. 1987) ........ 46

*P&R Temmer v. FCC*,
743 F.2d 918 (D.C. Cir. 1984) ........ 46

*Starr v. FAA*,
589 F.2d 307 (7th Cir. 1978) ........ 28

*Tex. Oil & Gas Ass'n v. EPA*,
161 F.3d 923 (5th Cir. 1998) ........ 40

*United Parcel Serv., Inc. v. Postal Regul. Comm'n*,
955 F.3d 1038 (D.C. Cir. 2020) ........ 41

*Waterkeeper All. v. EPA*,
140 F.4th 1193 (9th Cir. 2025) ........ 42

*Westar Energy, Inc. v. FERC*,
473 F.3d 1239 (D.C. Cir. 2007) ........ 24, 29

*Whistleblower 14106-10W v. Comm'r of Internal Revenue*,
137 T.C. 183 (2011) ........ 7, 35

**Statutes**

15 U.S.C. §78mm ........ 3, 7, 8, 19, 21, 28, 40, 41, 46

15 U.S.C. §78u-6 ........ 1, 5, 6, 9, 18, 22, 38

15 U.S.C. §80a-9 ........ 39

17 C.F.R. §240.21F-13 ........ 5

17 C.F.R. §240.21F-17 ........ 34

17 C.F.R. §240.21F-4 ........ 20, 28

17 C.F.R. §240.21F-8 ........ 8

**Other Authorities**

Bank of Am. N.A., SEC No-Action Letter, 2017 WL 2275508 (May 24, 2017) ........ 39

Comm'r Allison Herren Lee, *June Bug vs. Hurricane: Whistleblowers Fight Tremendous Odds and Deserve Better* (Sept. 23, 2020) ........ 36

Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ........ 6

S. Rep. No. 111-176 (2010) .......... 1, 5, 6, 36

SEC Amicus Brief, *Somers v. Digit. Realty Tr., Inc.*, 2016 WL 3088310 (9th Cir. May 25, 2016) .......... 30, 31

SEC, *2020 Annual Report to Congress: Whistleblower Program* (Nov. 16, 2020) .......... 32

SEC, *Annual Report to Congress for Fiscal Year 2023* (Nov. 14, 2023) .......... 34, 36

SEC, *Marc D. Broidy & Broidy Wealth Advisors, LLC, Litig. Rel. 23679* (Oct. 27, 2016) .......... 27

U.S. Amicus Brief, *Digit. Realty Tr., Inc. v. Somers*, 2017 WL 4676666 (U.S. Oct. 17, 2017) .......... 34

Whistleblower Order, 2014 WL 3749705 (July 31, 2014) .......... 37, 41

Whistleblower Order, 2018 WL 1782127 (Apr. 12, 2018) .......... 42

Whistleblower Order, 2018 WL 4488273 (Sept. 6, 2018) .......... 37, 38

Whistleblower Order, 2019 WL 2338413 (June 3, 2019) .......... 37

Whistleblower Order, 2022 WL 13965125 (Oct. 24, 2022) .......... 8

Whistleblower Order, 2022 WL 17422577 (Dec. 2, 2022) .......... 21, 28, 33, 37

Whistleblower Order, 2022 WL 768309 (Mar. 11, 2022) .......... 46

Whistleblower Order, 2023 WL 2660927 (Mar. 27, 2023) .......... 42, 43

**Regulations**

Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300 (June 13, 2011) .......... 7, 30, 31, 33

Whistleblower Program Rules, 83 Fed. Reg. 34702 (July 20, 2018) .......... 25

Whistleblower Program Rules, 85 Fed. Reg. 70898 (Nov. 5, 2020) .......... 8, 9, 25

Whistleblower Program Rules, 87 Fed. Reg. 54140 (Sept. 2, 2022) .......... 38

## INTRODUCTION

[redacted]. But [redacted] blew the [redacted] the violations internally and to the Securities and Exchange Commission. [redacted] As Commission Staff later recognized, these reimbursements never would have happened [redacted].

[redacted] anticipated receiving a large whistleblower award from the SEC. In 2010, Congress had created a new, robust whistleblower program designed to motivate individuals to report securities violations to the SEC. Under the program, successful whistleblowers are entitled to 10-30% of the "monetary sanctions" collected. 15 U.S.C. §78u-6(b). Congress believed that these "ample" and "predictable" awards were critical to the success of the program. S. Rep. No. 111-176, at 112 (2010). Because whistleblowers often face "career suicide" when they blow the whistle, Congress recognized that whistleblowers needed a significant incentive to come forward and expose wrongdoers. *Id.*

Congress's predictions were prescient when it came to [redacted] faced a difficult choice: blow the whistle and risk [redacted]

or stay silent and do nothing. [redacted] decision-making was the sizable and [redacted] the SEC would impose monetary sanctions [redacted] returned the money before the Commission acted, the Commission's practice was to impose monetary sanctions that included this amount [redacted] but to label these sanctions "deemed satisfied" by the earlier reimbursements. In either [redacted] would be compensated for the true [redacted] because the "monetary sanctions" collected would include [redacted].

But the SEC unexpectedly changed course [redacted] preemptively disgorged [redacted], the Commission refused to follow its "deemed satisfied" protocol, even after [redacted] repeatedly raised the issue with the Commission Staff. Instead, the Commission imposed only [redacted] monetary sanctions. So when the Staff calculated [redacted] was set to receive [redacted] fraction of what [redacted] receive.

[redacted] Congress gave the Commission the power to fix this mistake. The Commission may exempt any person from any statutory provision or regulation when the exemption would be "necessary or appropriate in the public interest" and "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1). Before the Commission, [redacted] that the Commission should use that power here to treat the relevant "monetary sanctions" as [redacted] An exemption would ensure [redacted] treated similarly to prior whistleblowers, who could have received higher awards when the Commission issued penalties that were "deemed satisfied" by earlier disgorgements. An exemption also would ensure that future whistleblowers were not dissuaded from reporting internally, that wrongdoers were not incentivized to retaliate against whistleblowers, and [redacted] was awarded for the full value [redacted]

But in a short, poorly reasoned order, the Commission denied [redacted]. The Commission didn't dispute that it had the power to issue this exemption. Rather, the Commission said that it had never issued this type of exemption before, that the statute says that the monetary sanctions should be [redacted], and—in a one-sentence, conclusory statement—that an exemption would lead to "uncertainty, inconsistences, and … delay." Order Determining Whistleblower Award Claims, [redacted] ("Order"), JA142-44. The Commission never addressed any of [redacted]. Nor did the

Commission address the mandatory factors for assessing the appropriateness of an exemption.

The Commission's determination is a classic arbitrary-and-capricious order. It is hornbook law that agencies must treat similarly situated individuals alike or provide a relevant distinction for changing course. If the Commission had followed its normal practice—imposing monetary sanctions that were "deemed satisfied" by earlier disgorgements—[redacted] have received an award that reflected the true value [redacted] The Commission never explained why [redacted] treated differently than others in the same position. And the Commission's failures don't stop there. [redacted] multiple, well-supported arguments for why issuing an exemption would be in the public interest and consistent with the protection of investors. Yet the Commission never addressed any of these arguments. Indeed, the Commission never even considered the mandatory statutory factors at all.

[redacted] Yet the Commission's unreasoned, unresponsive opinion failed to adequately explain why [redacted] treated differently. The SEC's denial of exemptive relief was arbitrary, capricious, and an abuse of discretion. The Court should grant the petition, vacate the order below, and remand with instructions to either grant [redacted] exemption or, alternatively, reconsider [redacted]

## JURISDICTIONAL STATEMENT

This Court has jurisdiction to review the Commission's order because the Commission issued a "determination" under 15 U.S.C. §78u-6 [redacted] does not challenge "the determination of the amount of an award if the award was made in accordance with [15 U.S.C. §78u-6(b)]." 15 U.S.C. §78u-6(f). The Commission issued its order on September 30, 2025. *See* Order, JA132. [redacted] petitioned for review on October 20, 2025. *See* Dkt. 1.1, JA146. Venue is proper [redacted] 15 U.S.C. §78u-6(f); *see also* 17 C.F.R. §240.21F-13(a).

## STATEMENT OF THE ISSUE

Whether the Commission's determination refusing to exempt [redacted] defining the relevant "monetary sanctions" was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## STATEMENT OF THE CASE

This petition for review arises from whistleblower award proceedings before the Securities and Exchange Commission. [redacted] was responsible for nearly [redacted] being returned to injured investors, the Commission refused to issue an exemption to consider this disgorgement as part of the relevant "monetary sanctions." Order 7-13, JA138-44. [redacted] appeals that determination. *See* 15 U.S.C. §78u-6(f).

### A. The Dodd-Frank Act and the SEC's Whistleblower Program

In 2010, following the global financial crisis, Congress sought to promote disclosure of financial fraud through the Dodd-Frank Act. A "major lesson" from the crisis was "the importance of transparency in financial markets." S. Rep. No. 111-176,

at 38. The Act was designed "[t]o promote the financial stability of the United States by improving accountability and transparency in the financial system." Dodd-Frank Wall Street Reform & Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010). The Act took numerous steps to give the SEC "more power, assistance and money" so it could be an "effective securities markets regulator." S. Rep. No. 111-176, at 37.

Among its reforms, the Act created "a new, robust whistleblower program" to assist the Commission "in identifying securities law violations." *Id.* at 38. Congress was persuaded by the "efficiency of Whistleblower Programs." *Id.* at 110. Whistleblower tips '"detected 54.1% of uncovered fraud schemes in public companies,"' whereas external auditors like the SEC "detected a mere 4.1% of uncovered fraud schemes." *Id.* To motivate people to blow the whistle, the Act mandates that the Commission "shall pay an award or awards to 1 or more whistleblowers who voluntarily provided original information to the Commission that led to the successful enforcement of [a] judicial or administrative action, or related action." 15 U.S.C. §78u-6(b)(1). Whistleblower awards must be between 10 percent and 30 percent of "what has been collected of the monetary sanctions imposed in the action or related actions." *Id.* §78u-6(b). All awards are paid out of the Investor Protection Fund, which is funded entirely through sanctions. *Id.* §§78u-6(g).

Providing a large and fixed award is a "critical component" of the program because it offsets the "enormous risk of blowing the whistle." S. Rep. No. 111-176, at 111. "To their detractors, whistleblowers are viewed as 'snitches'" who "wish to hurt

their companies" and "who are willing to publicly embarrass their co-workers and their companies in order to satisfy their political, ethical, moral, or personal agendas." *Whistleblower 14106-10W v. Comm'r of Internal Revenue*, 137 T.C. 183, 202 (2011) (quotation marks omitted). Retaliation is all-to-common and a reputation for whistleblowing can follow an employee from employer to employer. And potential whistleblowers know that they "often face the difficult choice between telling the truth and ... committing 'career suicide,'" or staying silent. *Digit. Realty Tr., Inc. v. Somers*, 583 U.S. 149, 155 (2018) (quoting S. Rep. No. 111-176, at 111-12). The whistleblower program is designed to offset this problem with a monetary incentive. For that reason, these incentives are meant to be "ample," and "predictable" so that whistleblowers "identif[y] and remed[y] violations of the Federal securities laws quickly." S. Rep. No. 111-176 at 112; Securities Whistleblower Incentives and Protections, 76 Fed. Reg. 34300, 34323 (June 13, 2011). Otherwise, whistleblowers will stay silent, and fraud will go undetected.

Recognizing that no statute or regulation will fairly address every situation, Congress in the Exchange Act also empowered the Commission to issue exemptions when appropriate. Specifically, the Commission is empowered to "exempt any person … from any provision or provisions of this chapter or of any rule or regulation thereunder" if the exemption would be "necessary or appropriate in the public interest" and "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1). In the whistleblower context, this exemptive power authorizes the Commission to waive compliance with the Exchange Act and provisions of the whistleblower rules when

these factors are met. 15 U.S.C. §78mm(a)(1); 17 C.F.R. §240.21F-8(a); *see, e.g.*, Whistleblower Order, 2022 WL 13965125, at *1 (Oct. 24, 2022).

**B. The Commission's Practice of Imposing Monetary Sanctions That Are "Deemed Satisfied" by Earlier Disgorgements.**

In many cases, a 10-30% award of all collected monetary sanctions suffices to ensure ample and predictable awards. Congress defined "monetary sanctions" to include "any monies, including penalties, disgorgement, and interest, ordered to be paid." 15 U.S.C. §78u-6(a)(4). Through this definition, Congress intended for "'monetary sanctions'" that "support a whistleblower award" to cover all payments that are "in the nature of relief for the violations that are the subject of the [enforcement] action." Whistleblower Program Rules, 85 Fed. Reg. 70898, 70905 (Nov. 5, 2020); s*ee, e.g.*, Order, 2020 WL 374345, at *1 n.3 (Jan. 22, 2020) ("We have treated those amounts distributed to injured investors by the court-appointed receiver in the Covered Action as collected monetary sanctions on which Claimant's award can be based.").

There is one recurring scenario, however, when Congress's definition of "monetary sanctions" fails to encompass all payments that are "in the nature of relief for the violations"—when the entity, threatened by an impending investigation or sanction, voluntarily disgorges large payments to those it has wronged before the Commission orders sanctions.[1] Particularly when a whistleblower reports internally,

[1] *See, e.g., In re Roadrunner Transp. Sys., Inc.*, Rel. No. 34-96909, at 7 (Feb. 14, 2023), bit.ly/3TUUtxv (entity privately entered a court-approved class settlement before the Commission imposed sanctions); *In re ABB Ltd.*, Rel. No. 34-96444, at 8, 11 (Dec. 3, 2022), bit.ly/3HsjOaF (entity privately settled before the Commission imposed

entities are incentivized to make these pre-emptive payments as a way to ward off larger penalties and interest, or as a way to earn goodwill with the Commission. *See, e.g., In re Barclays PLC*, Rel. No. 34-95944, at 8 (Commission considered favorably "remedial acts promptly undertaken," including a "rescission offer" made prior to SEC enforcement). If issued before the Commission orders sanctions, these payments don't necessarily count as "monetary sanctions" under the statute because they are not "monies … *ordered* to be paid." 15 U.S.C. §78u-6(a)(4) (emphasis added). So even if a whistleblower's tip to the SEC reveals millions of dollars in violations, those millions would not be counted towards the basis for an award if the entity speedily repays its ill-gotten gains—even when those payments are in obvious response to the whistleblower's actions. *See* Whistleblower Program Rules, 85 Fed. Reg. at 70905.

The Commission has a longstanding practice in these situations that ensures that whistleblowers are awarded for the true scope of their actions, regardless of any preemptive disgorgements by the offending entities. The SEC's practice is to impose monetary sanctions that include these preemptive disgorgements and then consider the sanctions to be "deemed satisfied" by the earlier disgorgements. *See, e.g., In re ABB Ltd.*, Rel. No. 34-96444, at 11 (Dec. 3, 2022) ("Respondent shall … pay disgorgement of $58,000,000 and prejudgment interest of $14,554,267 to the Securities and Exchange

---

sanctions); *In re Barclays PLC*, Rel. No. 34-95944, at 8, 11 (Sept. 29, 2022), bit.ly/41OZcCv (entity offered rescission to investors before the Commission imposed sanctions).

Commission, which is deemed satisfied by the payment previously made to the Government of South Africa pursuant to the Settlement Agreement of December 11, 2020."). Because the "monetary sanctions" collected include this higher amount, the Commission's practice allows potential whistleblowers to receive awards based on the true dollar amount of the violations they exposed. The Commission's practice provides the reassurance necessary for whistleblowers to report internally without fear that an entity's attempts to avoid greater sanctions will also deprive the whistleblower of an otherwise predictable award.

### C. The Securities Violations [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

### D. [redacted] Whistleblowing

[redacted]

[redacted]

### E. The SEC's Investigation [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

### F. Proceedings Below

[redacted] application, urging the Commission to issue an exemption so [redacted] receive an award based on the entire value [redacted] *See* Whistleblower Appl. Pt. II, JA153.

On November 27, 2023, the Claims Review Staff issued a preliminary determination [redacted] "receive an award of 30% of the monetary sanctions collected" [redacted] "initially reported [his] concerns internally" and "provided ongoing assistance over the course of the investigation by identifying potential witnesses and assisting staff with document requests." Prelim. Determination 1-2, JA95-96. But in a cursory footnote, the Staff denied [redacted] "that the Commission use its exemptive authority" to grant "a larger award based upon [redacted] reimbursements." Prelim. Determination 2 n.4, JA96. The Staff did not dispute that the Commission had the power to issue this exemption. Yet the Staff found that "[b]ased on the information before it," it "would not be appropriate for the Commission to use its exemptive authority to award an amount above the statutory

maximum of 30% of the amount of monetary sanctions ordered and collected." *Id.* The Staff gave no further explanation for why an exemption "would not be appropriate." *Id.* Because of the Staff's refusal to issue an exemption, [redacted] receive a far smaller award than [redacted]

[redacted] the Preliminary Determination to the full Commission. [redacted] preliminary determination was arbitrary and capricious because it failed to treat similar whistleblowers alike—as the Commission had previously included similar disgorgements within the "monetary sanctions." Response to Prelim. Determination 7-10, JA115-18. [redacted] argued that issuing an exemption would be in the public interest and consistent with the protection of investors because otherwise future whistleblowers would be dissuaded from reporting internally and wrongdoers would be incentivized to retaliate against whistleblowers. *Id.* 11-16, JA119-24. The Preliminary Determination also was unfair and inequitable to [redacted] a model whistleblower, [redacted] *d.* 16-20, JA124-28.

On September 30, 2025, the Commission issued an order agreeing with the Preliminary Determination and refusing to issue an exemption [redacted]. The Commission agreed that [redacted] "provided significant information alerting Staff about the Relevant Misconduct, prompting the opening of the Investigation." Order 9, JA140. [redacted] "saved Staff significant time and resources and provided ongoing

assistance over the course of the Investigation by identifying potential witnesses and assisting Staff with document requests." *Id.* So the Commission agreed [redacted] should receive the maximum percentage (30%) of the monetary sanctions collected. *Id.*

The Commission, however, refused to use its exemptive power to treat the relevant "monetary sanctions" [redacted] (the disgorgements plus the civil money penalty), instead of [redacted] (the civil money penalty alone). Like the Staff, the Commission didn't dispute that it had the statutory power to issue this exemption. Instead, the Commission refused to issue the exemption for three reasons.[2] First, the Commission said that it had "previously declined" to include "reimbursements to investors made pursuant to voluntary undertakings" as part of the monetary sanctions or to "permit an award to be calculated based on amounts greater than those actually 'collected.'" Order 10-11, JA141-42. Second, the Commission said that the "[t]he statutory definition of 'monetary sanctions' is clear and unambiguous and does not permit voluntary reimbursements made by a respondent before an enforcement action is brought to qualify as monetary sanctions upon which a whistleblower award can be made." Order 12, JA143. Third, the Commission said (without elaboration) that "granting a waiver to allow amounts that were not ordered by a covered action to count

[2] The Order mischaracterized [redacted] as a "request to increase the Award." Order 10, JA141. [redacted] challenge the Commission's weighing of the factors that determine the percentage [redacted]. *See* 15 U.S.C. § 78u-6(b). Here and below, [redacted] the Commission's decision not to exempt [redacted] the statutory and regulatory provisions defining the relevant "monetary sanctions."

as monetary sanctions on which an award could be based would introduce uncertainty, inconsistency, and could delay the processing of award claims." Order 12-13, JA143-44. The Commission never addressed [redacted] that it was not treating similarly situated whistleblowers alike. The Commission never addressed [redacted] that denying an exemption would disincentivize whistleblowers from coming forward, incentivize retaliatory behavior, and be unfair and inequitable [redacted]. And the Commission never considered the statutory factors it was required to consider for an exemption, namely, whether an exemption would be "necessary or appropriate in the public interest" and "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1).

[redacted] petitioned for review in this Court.

## SUMMARY OF ARGUMENT

The Commission must treat similar whistleblowers alike or explain the relevant distinctions, and when considering the use of its exemptive power, it must consider whether an exemption would promote the public interest and be consistent with the protection of investors. [redacted] thorough and well-supported arguments for why [redacted] an exemption from the statutory limitations on "monetary sanctions" was necessary based on the Commission's prior practices and was consistent with the public interest and protecting investors. The Commission [redacted] and supplied no persuasive reasoning of its own. The resulting determination was arbitrary, capricious, an abuse of discretion, and contrary to law.

**I.** The Commission failed to treat [redacted] similar whistleblowers by failing to follow its ordinary practice of treating voluntary payments as sanctions that were "deemed satisfied." In its prior orders, the Commission has made a consistent practice of including voluntary payments in its sanctions using the "deemed satisfied" language. It did not do so here. It then compounded its mistake by [redacted] exemption from the limitation on monetary sanctions. The Commission could have brought this case into harmony with its established practice by exempting [redacted] the requirement that "monetary sanctions" include only payments ordered by the Commission, and instead include voluntary reimbursements. *See* 17 C.F.R. §240.21F-4(e). But the Commission did not even try to distinguish the many examples of similar situations [redacted]. Its failure to [redacted] point to any "relevant distinction" between [redacted] its prior cases renders the Commission's determination unlawful.

**II.** The Commission failed to consider [redacted] arguments for why an exemption was in the public interest and consistent with the protection of investors. An agency action is arbitrary and capricious if the agency "entirely fail[s] to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). [redacted] three strong arguments for an exemption: it would encourage future whistleblowers to report internally; it would disincentivize companies from threatening to retaliate against whistleblowers by making eleventh-hour voluntary payments to wipe away their award; and it would avoid undue hardship,

unfairness, and inequity [redacted] The Commission regularly grants exemptions to the whistleblower rules when "a strict application of the rules would result in undue hardship, unfairness, or inequity." Whistleblower Order, 2022 WL 17422577, at *3 (Dec. 2, 2022). The Commission's failure to address these arguments was arbitrary and capricious, an abuse of discretion, and contrary to law.

**III.** The Commission also failed to consider the mandatory factors for issuing an exemption—that the exemption must be (1) "necessary or appropriate in the public interest" and (2) "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1). [redacted] to the Commission why issuing an exemption would satisfy these statutory factors. But the Commission never considered them. *See* Order 10-13, JA141-44. This failure to comply with mandatory factors was arbitrary and capricious, an abuse of discretion, and contrary to law.

**IV.** Finally, the Commission failed to articulate a satisfactory explanation for its determination. A satisfactory articulation explains how an outcome coheres with previous decisions, makes more than conclusory assertions, and grapples with the contrary arguments. The Commission did not do so here. Not only did it fail to respond to [redacted] arguments, but its proffered arguments were flawed and incoherent. The Commission pointed to two orders, but both are inapposite [redacted] and easily distinguishable. The Commission noted that the definition of "monetary sanctions" did not include the disgorgements, but the Exchange Act authorizes the

Commission to make *exemptions* from statutes when certain conditions are met, and that power would be meaningless if the Commission could simply point to the statute as a reason to deny an exemption. Finally, the Commission made a conclusory statement that an exemption would introduce uncertainty, inconsistency, and delay. That unsupported assertion was too conclusory to support the Commission's decision—and wrong to boot, as it relied on inapposite prior orders for support. By failing to provide a satisfactory explanation for its decision, the Commission's action was arbitrary and capricious, an abuse of discretion, and contrary to law.

## STANDARD OF REVIEW

This Court will "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. §706(2); *see* 15 U.S.C. §78u-6(f). Commission orders are arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency.'" *State Farm*, 463 U.S. at 43. The Court's review must be "searching and careful" to ensure that "the record … show[s] that the agency examined the relevant data and articulated a satisfactory explanation for its action." *Nat. Res. Def. Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (cleaned up). For this reason, "[f]ailure to respond in any meaningful way … to [a petitioner's] arguments" or to consider "'all relevant factors'" is arbitrary and capricious. *Evergreen*

*Shipping Agency v. Fed. Mar. Comm'n*, 106 F.4th 1113, 1117 (D.C. Cir. 2024); *Carlson v. Postal Regul. Comm'n*, 938 F.3d 337, 344 (D.C. Cir. 2019). And where "a party plausibly alleges that it has received inconsistent treatment," arbitrary-and-capricious review requires the agency to offer "a reasonable and coherent explanation for the seemingly inconsistent results." *Balt. Gas & Elec. Co. v. FERC*, 954 F.3d 279, 286 (D.C. Cir. 2020).

In reviewing the Commission's factual findings, substantial evidence "'is less than a preponderance,'" but "'more than a scintilla of evidence.'" *Kilgour v. SEC*, 942 F.3d 113, 120 (2d Cir. 2019). The Commission's application of the law is reviewed *de novo* and its interpretations of statutes receive no deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). Deference to an agency's interpretation of a regulation is almost never appropriate. *See Kisor v. Wilkie*, 588 U.S. 558, 574-75 (2019). It is particularly inappropriate where "the agency's interpretation conflicts with a prior interpretation" or is merely a "convenient litigating position." *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 155 (2012).[3]

## ARGUMENT

This Court should grant the Petition and vacate the Commission's determination. The Commission departed from its treatment of similar whistleblowers by excluding the voluntary reimbursements. The Commission refused to consider [redacted] arguments. And the Commission failed to consider the mandatory

[3] *Kisor* was wrongly decided. *Cf. Loper Bright*, 603 U.S. at 392. If the Commission seeks and receives deference for its interpretations of its regulations, [redacted] right to ask the Supreme Court to overturn that decision.

factors—public interest and investor protection—that govern its exemption power. What little reasoning the Commission provided neither addressed [redacted] nor articulated a satisfactory explanation for the Commission's decision.

**I. The Commission failed to treat similarly situated whistleblowers alike or provide a relevant distinction for acting differently.**

"A fundamental norm of administrative procedure requires an agency to treat like cases alike." *Westar Energy, Inc. v. FERC*, 473 F.3d 1239, 1241 (D.C. Cir. 2007) (holding that an agency's denial of a waiver request to one entity but not another similarly situated entity was arbitrary and capricious). If an agency "makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." *Id.*; *see, e.g.*, *Colo. Interstate Gas Co. v. FERC*, 850 F.2d 769, 774 (D.C. Cir. 1988) ("[T]he Commission's dissimilar treatment of evidently identical cases … seems the quintessence of arbitrariness and caprice."). Here, the Commission has [redacted] similarly situated whistleblowers, and it failed to give any explanation for treating these similar cases differently.

The Commission has encountered situations before where an entity disgorges ill-gotten gains ahead of an enforcement action. In such cases, the Commission has "deemed" those payments as having been ordered as a sanction in the enforcement action. *See, e.g., In re ABB Ltd.*, Rel. No. 34-96444, at 11 (private settlement paid in 2020 later treated as a disgorgement "deemed satisfied"); *In re Roadrunner Transp. Sys., Inc.*, Rel. No. 34-96909, at 9 (same for court-approved class settlement); Whistleblower Order, 2020 WL 374345, at *1 n.3 (same for "amounts distributed to injured investors by [a]

court-appointed receiver" and "monetary sanctions collected … by the USAO in [a] Related Action").

The Commission's use of deeming clauses ensures that whistleblowers are compensated for the full value of their actions. Congress intended for "'monetary sanctions'" that "support a whistleblower award" to cover all payments that are "in the nature of relief for the violations that are the subject of the [enforcement] action." Whistleblower Program Rules, 85 Fed. Reg. at 70905; *see also* Whistleblower Program Rules, 83 Fed. Reg. 34702, 34707-08 (July 20, 2018) (explaining that an award should not be based on other payments like "discovery sanctions, receivership fees and costs, taxes, and … attorney's fees"). When an entity preemptively disgorges funds that should have gone to investors, the reimbursements are "in the nature of relief" and directly related to the "violations that are the subject of the action." 85 Fed. Reg. at 70905. Treating those early payments as a sanction "deemed satisfied" upholds the letter and spirit of Congress's method for calculating awards.

In the Order below, the Commission did not dispute that its consistent practice is to treat pre-emptive reimbursements as sanctions that are "deemed satisfied." Nor could it. Consider *In re Insight Venture Management, LLC*, Rel. No. 40-6332 (June 20, 2023), bit.ly/48OnE9D. There, Insight Venture Management, an investment adviser, unlawfully charged fees to private equity funds that it advised. *Id.* at 2. While the Commission's investigation was ongoing, Insight returned $864,958.17 to investors ($773,754.41 in improper fees and $91,203.76 in interest). *Id.* at 5. Later, in its cease-

and-desist order, the Commission found that Insight violated federal law and ordered Insight to pay a civil penalty of $1.5 million. *Id.* at 7. But the Commission also ordered Insight to "pay disgorgement of $773,754.41 and prejudgment interest of $91,203.76 for a total of $864,958.17, with such payment being *deemed satisfied* by the payments Insight previously made … to the Funds." *Id.* (emphasis added). This "deemed satisfied" language was critical for potential whistleblowers. Even though Insight returned the money *before* the Commission brought an enforcement action, the Commission's deeming clause ensured that an eligible whistleblower could recover an award based on the combined total of Insight's prior reimbursements ($864,958.17) and the civil penalty ($1.5 million).

Similarly, in *In re Barclays PLC*, a bank unlawfully sold over $17 billion in unregistered securities. *See* Rel. No. 34-95944, at 2. The bank self-reported the violation and made a rescission offer to compensate investors for the illegal sales. *Id.* at 3. While the rescission was finalized before the Commission brought an enforcement action, the Commission's cease-and-desist order treated the rescission offer as one of the Commission's sanctions. *Id.* at 11. On top of ordering Barclays to pay $200 million in penalties, the Commission ordered it to "pay disgorgement in the amount of $149,731,011.00 ... [plus] interest," which the Commission "deemed satisfied by [Barclays'] offer of rescission to impacted investors." *Id.* An eligible whistleblower could thus recover an award based on the Commission's civil penalties and Barclays' rescission offer.

*In re UBS Financial Services, Inc.* is yet another example. There, a broker-investment adviser provided inadequate and misleading information about a product it offered and sold to its advisory clients. *See* Rel. No. 34-95168, at 2 (June 29, 2022), bit.ly/3vwoLMx. Just as in *Insight* and *Barclays*, UBS made remedial payments before the Commission began its enforcement. *Id.* at 7. To settle the case, the Commission ordered USB to "pay disgorgement of $5.8 million" plus interest. *Id.* Again, the Commission said that these payments "shall be deemed satisfied by the payments previously made by UBS to investors." *Id.* This order ensured that any whistleblower responsible for UBS's remedial payments would be awarded based on those payments.

These are not moribund examples of prior Commission practice. They were all announced within the last few years. [redacted] Yet the Commission abandoned that practice here without any explanation.

If [redacted] not preemptively issued their reimbursements, there is no question that the Commission would have ordered them to disgorge those amounts. *See, e.g.*, *In re NB Alts. Advisers LLC*, Rel. No. 40-5079, at 2, 6-7 (Dec. 17, 2018), bit.ly/3NQ7fsZ (ordering disgorgement in a similar situation); *In re Apollo Mgmt. V, LP*, Rel. No. 40-4493, at 2-3, 10-12 (Aug. 23, 2016), bit.ly/3S7SzZ4 (same); *In re Blackstreet Cap. Mgmt., LLC*, Rel. No. 34-77959, at 2, 9 (June 1, 2016), bit.ly/48Et3Qh (same); *see also* SEC, *Marc D. Broidy & Broidy Wealth Advisors, LLC, Litig. Rel. 23679* (Oct. 27, 2016), bit.ly/3NLWw2H (seeking disgorgement in a similar situation); *Liu v. SEC*,

591 U.S. 71, 80 (2020) ("[A] remedy tethered to a wrongdoer's net unlawful profits, whatever the name, has been a mainstay of equity courts."). And the Commission was aware of the issue, as [redacted] repeatedly urged the Commission to include the reimbursements as sanctions that were "deemed satisfied." Whistleblower Appl. Pt. I, 14-15, JA31-32. Including this deeming clause would not have affected [redacted] but it would have ensured [redacted] awarded for the full recovery that [redacted].

The Commission never disputed that it could have remedied this inconsistency through its power to issue exemptions. Order 7-13, JA138-144; *see* 15 U.S.C. §78mm(a)(1). The Commission's exemptive power allows it to waive statutory or regulatory requirements, unless an exemption is specifically prohibited, which is not the case here. *Id.* The Commission could have brought this case into harmony with its established practices by [redacted] the requirement that "monetary sanctions" include only payments ordered by the Commission, and instead include voluntary reimbursements. *See* 17 C.F.R. §240.21F-4(e). Indeed, correcting such inequities is why Congress gave the Commission this exemptive power in the first place. *See Starr v. FAA*, 589 F.2d 307, 312 (7th Cir. 1978) ("The 'public interest' language of [a statutory exemption] … direct[s] a primary emphasis on the elimination of anomalies and inequities."); Whistleblower Order, 2022 WL 17422577, at *3 ("[T]he public interest warrant[s] an exemption … [where] a strict application of the rules would result in undue hardship, unfairness, or inequity."). Issuing an exemption here would have

[redacted] was treated the same as other potential whistleblowers. Failing to do so only compounded the Commission's error. *See, e.g.*, *Westar Energy*, 473 F.3d at 1241.

In its Order, the Commission did not devote a single word to distinguishing *Insight*, *Barclays*, *UBS Financial Services*, or any of the other cases where it has used "deemed satisfied" language. The Commission likely ignored its prior practices because it has no reasonable explanation [redacted]. The Commission's failure to [redacted] to point to any "relevant distinction" [redacted] renders the Commission's determination arbitrary and capricious and unlawful. *Westar Energy*, 473 F.3d at 1241.

## II. The Commission failed to consider and address [redacted] exemption was in the public interest and consistent with the protection of investors.

An agency action is arbitrary and capricious if the agency "entirely fail[s] to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. An agency also violates this standard if it "fails to respond to 'significant points' and consider 'all relevant factors'" raised before the agency. *Carlson*, 938 F.3d at 344 (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35-36 (D.C. Cir. 1977)); *see also Evergreen Shipping*, 106 F.4th at 1117 (explaining that "failure to respond in any meaningful way to most of [the petitioner's] arguments is itself arbitrary and capricious"). "It is well established that [an agency] must meaningfully respond to the arguments raised before it." *New Eng. Power Generators Ass'n v. FERC*, 881 F.3d 202, 211 (D.C. Cir. 2018) (cleaned up).

Before the Commission, [redacted] three detailed arguments for why granting an exemption would be in the public interest and consistent with the protection of investors. But the Commission ignored them entirely.

***First***, [redacted] denying an exemption would dissuade other whistleblowers from reporting internally to the company at issue. Response to Prelim. Determination 11-13, JA119-21. The Commission has recognized that when whistleblowers report internally, this reporting benefits everyone, including investors, companies, and the Commission itself. *See generally* SEC Amicus Brief, *Somers v. Digit. Realty Tr., Inc.*, 2016 WL 3088310, at *9-11 (9th Cir. May 25, 2016). Internal reporting allows entities to quickly "stop on-going violations, thereby limiting the harm to the entities and investors sooner than might otherwise have been the case." Securities Whistleblower Incentives and Protections, 76 Fed. Reg. at 34360. Internal reporting also can "complement [and] enhance [the Commission's] enforcement efforts." SEC Amicus Brief, 2016 WL 3088310, at *10-11 (quoting 76 Fed. Reg. at 34359 n.450). For example, because "the subject company may at times be better able to distinguish between meritorious and frivolous claims, … [s]creening allegations through internal compliance programs may limit false or frivolous claims, provide the entity an opportunity to resolve the violation and report the result to the Commission, and allow the Commission to use its resources more efficiently." *Id.* (citing 76 Fed. Reg. at 34359 n.450). Internal reporting is especially important in cases of self-dealing (as here)

because the practice is often extremely difficult for outsiders to detect. *See, e.g.*, *Citizens United v. Schneiderman*, 882 F.3d 374, 382 (2d Cir. 2018).

While the benefits of internal reporting are significant, they are not guaranteed. "A principal challenge the Commission faced in crafting rules to implement the award program was ensuring that employees and others were not dissuaded from reporting internally due to the possibility of a monetary award." SEC Amicus Brief, 2016 WL 3088310, at *10. "Were this to happen, the Commission recognized, the result could be a reduction in the 'effectiveness of a company's existing compliance, legal, audit and similar internal processes for investigating and responding to potential violations of the Federal securities laws.'" *Id.* (quoting Proposed Rules, 75 Fed. Reg. 70488, 70488 (Nov. 17, 2010)). This would, in turn, "weaken corporate compliance with the securities laws." *Id.*

Accordingly, the Commission built three "significant incentives" into its whistleblower rules to encourage internal reporting. An individual who reports internally can (1) collect a whistleblower award if the internal report leads to a successful covered action; (2) be treated as though they reported to the Commission on the day he internally reported as long as he reports to the Commission within 120 days of reporting internally; and (3) receive a plus factor that increases his award percentage. 76 Fed. Reg. at 34322, 34359-60; *see also* SEC Amicus Brief, 2016 WL 3088310, at *12. Whistleblowers put their faith in these promised incentives. About 80 percent of whistleblowers who receive awards report internally. *Digit. Realty Tr., Inc.*, 583 U.S. at

165; *see, e.g.*, SEC, *2020 Annual Report to Congress: Whistleblower Program*, at 18 (Nov. 16, 2020), bit.ly/4aZ0Gyb (81 percent in 2020).

[redacted], *see* Response to Prelim. Determination 5, [redacted] But because the Commission refused to include these reimbursements as sanctions that were "deemed satisfied," [redacted] an exponentially smaller award [redacted].

[redacted] whistleblowers (and their counsel) will not make the same mistake if the Commission withholds an exemption. The only relevant incentive to report internally—the possibility of an upward adjustment—is insignificant compared to having a higher award base. Response to Prelim. Determination 13, JA121. [redacted]. If the Commission declines to uniformly follow its "deemed satisfied" practice—even in cases like this one when the entity's disgorgement obviously was [redacted] whistleblowing and the Commission's impending sanctions than any altruism or

"voluntary" repentance—deciding not to report internally will be an easy call for the rational whistleblower going forward.

The Commission was warned about this loophole during the rulemaking process, but it declined to address the problem. In its 2011 rulemaking, the Commission was told that its rules could force whistleblowers to "decline to report a violation internally based on the strategic calculation that the company could reduce the monetary sanctions through remediation, self-reporting, cooperation, etc., which in turn might reduce the whistleblower's award." 76 Fed. Reg. at 34360 n.455. The Commission dismissed these concerns as lacking either "anecdotal [or] empirical evidence." *Id* [redacted] present the exact circumstances that the Commission seemed confident would not arise. *See* Whistleblower Order, 2022 WL 17422577, at *3 ("[T]he public interest warrant[s] an exemption … where the unique circumstances … rais[e] considerations substantially different from those which had been considered at the time the rules were adopted.").

***Second***, [redacted] denying an exemption would create a loophole that would incentivize wrongdoers to discourage and retaliate against whistleblowers. Response to Prelim. Determination 14-16, JA122-24. As the Commission has recognized, the point of the whistleblower program is to create "incentives for individuals with knowledge of securities violations to report those violations to the Commission." 76 Fed. Reg. at 34310. So "efforts to impede" that reporting "conflict with the statutory purpose" of the Dodd-Frank Act. *Id.* at 34352. Thus, "[e]nsuring that

individuals are free to report potential securities-related misconduct to the Commission without reprisal is crucial to the Whistleblower Program." SEC, *Annual Report to Congress for Fiscal Year 2023* at 6 (Nov. 14, 2023), bit.ly/48oB8ZL; *see also* U.S. Amicus Brief, *Digit. Realty Tr., Inc. v. Somers*, 2017 WL 4676666, at *2-3 (U.S. Oct. 17, 2017) (the whistleblower program's "two distinct measures" are its "award program" and its "prohibit[ion] [of] retaliation").

Under the Commission's rules, "[n]o person may take any action to impede an individual from communicating directly with the Commission staff about a possible securities law violation." 17 C.F.R. §240.21F-17(a). The Commission has stressed that it will bring enforcement actions against those who discourage employees from reporting to the Commission. *See 2023 Annual Report* at 6-8; *see, e.g.*, *In re Monolith Res., LLC*, Rel. No. 34-98322 (Sept. 8, 2023), bit.ly/3S93h1t. Indeed, the Commission has found company policies unlawful even when they only *hypothetically* discouraged reporting. *See, e.g.*, *2023 Annual Report* at 7 (finding that a company violated Rule 17 by requiring employees "to notify the company of any request for information from the Commission's staff"); *In re KBR, Inc.*, Rel. No. 34-74619, at 2-3 (Apr. 1, 2015), bit.ly/3O8YXg7 (finding that a company violated Rule 17 by using "a form confidentiality statement," even though the statement did not prohibit whistleblowing and the Commission was "unaware of any instances" where an employee was prevented from doing so).

[redacted], withholding an exemption would work

against this public policy by permitting retaliation. Consider an employee who reports internally an illegal practice that has cost investors $75 million and then reports the violation to the Commission. The entity, once it is nearing a settlement with the Commission, could "voluntarily" reimburse its investors any amount of that $75 million—depriving the employee of his well-deserved award and earning itself good credit with the Commission while doing so. [redacted]. Even the threat of this practice will be damaging—an entity could tell employees: "Look, you have a right to report to the Commission. Just know that there won't be any big payday for you. If the Commission investigates us, we will reimburse investors at the eleventh hour for the full amount. [redacted]" This simple and subtle comment will be enough to dissuade many employees from blowing the whistle.

After all, employees already face enormous pressures not to report violations to the Commission. Whistleblowers are seen as "snitches" who "wish to hurt their companies" and "who are willing to publicly embarrass their co-workers and their companies in order to satisfy their political, ethical, moral, or personal agendas." *Whistleblower 14106-10W*, 137 T.C. at 202 (quotation marks omitted). Whistleblowers never know what will happen if they blow the whistle—"Will they lose their jobs? Will their physical safety be threatened? Will anyone care? Will there be enough proof to

bring a case? If an action is brought, will it result in a recovery for victims? Will they ever be compensated in any way for these risks? Each of these questions creates well-grounded fear, uncertainty, and risk." Comm'r Allison Herren Lee, *June Bug vs. Hurricane: Whistleblowers Fight Tremendous Odds and Deserve Better* (Sept. 23, 2020), bit.ly/2TNOWZe. Without "ample" and "predictable" awards, many employees won't "take the enormous risk of blowing the whistle." S. Rep. No. 111-176, at 111-12.

The Commission has said that it is "committed to enforcing" the Act's "anti-retaliation provisions." *2023 Annual Report* at 6-7; *see* 75 Fed. Reg. at 70489 (adopting rules to "affor[d] broad anti-retaliation protections to whistleblowers"); *see, e.g.*, *In re Gaia, Inc.*, Rel. No. 34-97548 (May 23, 2023), bit.ly/3HzfHJP (imposing sanctions on company that terminated an employee for reporting to the Commission). But once entities know that a whistleblower can lose his award if they issue preemptive reimbursements, they will have another tool for retaliation. Not only is this a loophole in the Commission's anti-retaliation provisions, but it is also a practice that the Commission knowingly *rewards* by offering cooperation credit to entities that claim to take responsibility for their actions by disgorging profits. [redacted] JA9-10. If an entity can "voluntarily" issue their reimbursements just days before an order from the Commission to punish a whistleblower—and by getting away with it, deter future whistleblowers—they will.

***Third***, [redacted] granting an exemption would avoid undue hardship, unfairness, [redacted] The Commission regularly grants exemptions to the

whistleblower rules when "a strict application of the rules would result in undue hardship, unfairness, or inequity." Whistleblower Order, 2022 WL 17422577, at *3 & n.14 (citing examples); *see, e.g.*, Whistleblower Order, 2019 WL 2338413, at *2 (June 3, 2019) (granting an exemption when the whistleblower's "own remedial efforts ... were an indirect cause" of the whistleblower being disqualified); Whistleblower Order, 2014 WL 3749705, at *1 (July 31, 2014) (granting an exemption when the whistleblower "work[ed] aggressively internally ... to bring the securities law violations to the attention of appropriate personnel and to obtain corrective action for the benefit of investors"); Whistleblower Order, 2018 WL 4488273, at *5 (Sept. 6, 2018) (granting an exemption when doing so would "help minimize the hardship that [the whistleblower] encountered by seeking to report the violations after learning of them").

[redacted], those same considerations support an exemption here. *See* Response to Prelim. Determination 16-18, JA124-26. [redacted] deciding whether to risk "'career suicide'" by reporting [redacted] *Digit. Realty Tr.*, 583 U.S. at [redacted] stood to gain between 10% and 30% of [redacted] JA101. [redacted] would receive this award because whistleblower awards are based on the magnitude of the unlawful conduct, which is calculated by summing the "penalties, disgorgement, and interest" paid by the offending organization. 15 U.S.C. §78u-6(a)(4), (b)(1). And, for SEC whistleblowers,

disgorgement is the only element of monetary sanctions that whistleblowers are likely to know and thus is predictive of a future whistleblower award. This prospect of a large award was the primary [redacted]—like countless other whistleblowers—went to the Commission. [redacted], JA101; *see* Whistleblower Program Rules, 87 Fed. Reg. 54140, 54146 (Sept. 2, 2022) ("[L]arge awards directly advance the purpose of the whistleblower program (and by extension the interests of the investing public) by incentivizing whistleblowers to report violations." (cleaned up)). Yet because [redacted] preemptively reimbursed investors—and the Commission did not treat these reimbursements as sanctions that were "deemed satisfied" [redacted]

[redacted] recover an award for the full value of [redacted] would go a long way toward alleviating "the hardship [redacted] encountered by … report[ing]." Whistleblower Order, 2018 WL 4488273, at *5.

In addition, [redacted] by the Commission's own account, a model whistleblower. [redacted] the violation to the [redacted] own initiative" and without any "prior information request." [redacted] JA85. [redacted] "assist[ed] the investigative team throughout the course of the [redacted] Investigation" with six supplemental submissions and five phone and Webex meetings

with both the Commission and the DOJ. *Id.* ¶¶14-15, JA85-86; Whistleblower Appl. Part I at 7-8, JA24-25. [redacted] "consistently cooperative and quickly available to answer any follow-up questions." [redacted] provided information essential to the Commission discovering "the very existence [redacted] *Id.* ¶16, JA86. [redacted] *Id.* Moreover, "[e]very witness [the Commission] interviewed, or took testimony from, were ... persons [redacted]." *Id.* ¶18, JA87. Not only [redacted] "sav[e] the [Commission] significant time and resources," *id.*, but [redacted] there would have been no [redacted] "All of the investigative steps the staff took in the [redacted] Investigation stemmed from the information [redacted]." *Id.* ¶19, JA87. Such exemplary behavior is a classic reason for exempting someone from the normal application of the rules.[4]

In sum, [redacted] all three of these arguments to the Commission. Yet

[4] Indeed, the Commission regularly uses its exemptive power to help some of Wall Street's worst offenders. For example, those who violate federal securities laws can lose certain legal privileges that are essential to doing business, including well-known seasoned issuer (WKSI) status, the right to give investment advice or receive solicitation fees, safe harbors for forward-looking statements, and exemptions for private offerings. *See, e.g.*, 15 U.S.C. §80a-9(a). Yet the Commission regularly grants waivers from these provisions so that entities can continue to operate despite their violations. *See, e.g.*, Bank of Am. N.A., SEC No-Action Letter, 2017 WL 2275508 (May 24, 2017) (waiving a disqualification under 17 C.F.R. §230.506).

the Commission addressed none of them. *See* Order 10-13, JA141-44. This failure to respond to [redacted] renders the Commission's determination arbitrary and capricious and unlawful. *See Carlson*, 938 F.3d at 344; *Evergreen Shipping*, 106 F.4th at 1117.

## III. The Commission failed to consider the mandatory factors for issuing an exemption.

The Commission's exercise of its exemptive authority is conditioned by statute on two factors: the exemption must be (1) "necessary or appropriate in the public interest" and (2) "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1). Although the Commission's exemptive power is discretionary, the Commission still must comply with these statutory obligations. Agency decisions must not "fail[] to account for 'relevant factors,'" *BNSF Ry. Co. v. Fed. R.R. Admin.*, 62 F.4th 905, 910 (5th Cir. 2023), which includes considering the factors for granting an exemption that are mandated by Congress, *see Cboe Futures Exch., LLC v. SEC*, 77 F.4th 971, 976-77, 980 (D.C. Cir. 2023) (Commission's refusal to wield its exemptive authority was arbitrary and capricious because it failed to consider and explain why its actions were "'necessary or appropriate in the public interest'" and "'consistent with the protection of investors'"). "Even when an agency 'has significant discretion in deciding how much weight to accord each statutory factor,' that does not mean it is 'free to ignore any individual factor entirely.'" *Carlson*, 938 F.3d at 344 (quoting *Tex. Oil & Gas Ass'n v. EPA*, 161 F.3d 923, 934 (5th Cir. 1998)).

As discussed above, [redacted] to the Commission why issuing an exemption would be "necessary or appropriate in the public interest" and "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1). But the Commission never considered these two factors. *See* Order 10-13, JA141-44. Instead, the Commission merely stated that it had not issued this type of exemption previously, reiterated the text of the statute, and gave a one-sentence conclusory statement relying on an inapplicable prior order. *Id.*; *see infra* 41-47. Not only is that an unsatisfactory explanation, as explained below; it fails to comply with the statute. The Exchange Act requires the Commission to consider whether an exemption would be "necessary or appropriate in the public interest" and "consistent with the protection of investors." 15 U.S.C. §78mm(a)(1); *see, e.g.*, Whistleblower Order, 2014 WL 3749705, at *1. The Commission was required to address these factors and respond to the arguments [redacted]. Its proffered reasoning failed to comport with its statutory obligations and thus is arbitrary and capricious. *See Cboe Futures Exch.*, 77 F.4th at 980-82 (The SEC's "failure adequately to consider the potential harms to investors" when wielding its exemptive power "was arbitrary and capricious."); *see also United Parcel Serv., Inc. v. Postal Regul. Comm'n*, 955 F.3d 1038, 1050–51 (D.C. Cir. 2020) ("A statutorily mandated factor, by definition, is an important aspect of any issue before an administrative agency." (cleaned up)).

## IV. The Commission's reasoning neither addressed [redacted] nor provided a satisfactory explanation for the agency's action.

An agency's action is arbitrary and capricious when the agency fails to "articulate a satisfactory explanation for its action." *State Farm*, 463 U.S. at 43. To provide a

satisfactory explanation, an agency must show a "'rational connection between the facts found and the choice made.'" *Id.* This means that the agency "must explain how an outcome coheres with previous decisions." *Balt. Gas*, 954 F.3d at 286. And a "bare assertion … without further explanation or engagement with the contrary facts in the record is insufficient to meet this standard." *Waterkeeper All. v. EPA*, 140 F.4th 1193, 1228 (9th Cir. 2025); *see also Evergreen Shipping*, 106 F.4th at 1118 (agency cannot rest on "bare assertion[s]").

As discussed, the Commission failed to explain why it was [redacted] differently than other whistleblowers, respond to [redacted], or address the mandatory factors. Instead, the Commission offered three justifications for failing to provide an exemption. None of these arguments [redacted] provide a satisfactory explanation for the Commission's decision.

**1.** Pointing to two prior orders, the Commission first said that it had "previously declined to include reimbursements to investors made pursuant to voluntary undertakings" as part of the monetary sanctions or to "permit an award to be calculated based on amounts greater than those actually 'collected.'" Order 10-11, JA141-42 (citing Whistleblower Order, 2018 WL 1782127 (Apr. 12, 2018) ("2018 Final Order"); Whistleblower Order, 2023 WL 2660927 (Mar. 27, 2023) ("2023 Final Order")). Neither of these orders [redacted] arguments or provides a satisfactory explanation for denying an award here.

According to the Commission,[5] in the 2018 Final Order, the Commission determined that "a voluntary undertaking is not a monetary sanction" and so a "voluntary undertaking 'cannot be included for purposes of calculating a whistleblower award.'" Order 11, JA142 (quoting 2018 Final Order, at 1 n.1). But this order does not help the Commission here. [redacted] dispute that, under the rules, the disgorgement is not part of the "monetary sanctions." [redacted] an exemption because the Commission failed to include the "deemed satisfied" language in its order. The 2018 Final Order thus never addressed any of the issues that are relevant in this case.

The Commission's reliance on the 2023 Final Order fares no better. There, the claimant argued that the relevant "monetary sanctions" should be increased because the Commission would have been "'able to collect' a much larger amount of monetary sanctions' than it in fact did collect" if the Commission had pressed its interests more in a related bankruptcy proceeding. 2023 WL 2660927, at *5-6. The Commission rejected that argument because it was "based on [the] incorrect factual premise" that the Commission "could have collected the full [redacted] had it not voluntarily subordinated its interest in the bankruptcy proceeding." *Id.* at *5. "At best," the Commission "could only have been able to recover a fraction of the disgorgement." *Id.*

[5] The publicly available 2018 Final Order is heavily redacted. The public version does not reference "voluntary payments." If the Commission wishes to rely on this Order, it should file the unredacted version under seal.

Accordingly, the Commission concluded, basing the monetary sanction on what the Commission "hypothetically 'was able to collect'" would "introduce uncertainty [and] inconsistency, and could delay the processing of award claims." *Id.* at *6. The Commission also declined to use its exemptive authority to "set [the claimant's] award amount above the statutory limit." *Id.*

The 2023 Final Order doesn't support the Commission and, if anything, bolsters [redacted]. Unlike the Commission's determination here, the Commission's determination in the 2023 Final Order makes sense. The claimant was arguing that if the Commission had tried harder in the bankruptcy proceeding then it could have secured more monetary sanctions. Not only was this wrong factually, *see id.*, but it would have required the Commission to engage in pure speculation about how much monetary sanctions it could have "hypothetically" recovered if it had taken a different approach. As the Commission recognized, this approach would "introduce uncertainty [and] inconsistency, and could delay the processing of award claims." *Id.*.

But these facts aren't present here, [redacted]. *See* Response to Prelim. Determination 19-20, JA127-28. [redacted] there is no dispute about the amount of sanctions the Commission would have issued absent [redacted] reimbursements. [redacted] improperly charged an easily identifiable amount to [redacted] Indeed, the Commission identified the precise amount in its order. [redacted] JA9. And all agree that the Commission

could have assessed those sanctions by following its past practices and concluding that they were "deemed satisfied" by the disgorgement. The Commission thus wouldn't need to speculate or delay: Issuing an exemption would [redacted] the precise [redacted] received but for the preemptive disgorgements. *Id.* (showing the amount of disgorgement already calculated and known to the Commission).

**2.** In its Order, the Commission reiterated the statute and the rules, stating that "[t]he statutory definition of 'monetary sanctions' is clear and unambiguous and does not permit voluntary reimbursements made by a respondent before an enforcement action is brought to qualify as monetary sanctions upon which a whistleblower award can be made." Order 12, JA143. [redacted], under the statute and the Commission's rules, the [redacted] is not part of the "monetary sanctions," since the Commission in its order did not issue monetary sanctions that were "deemed satisfied" by the company's disgorgement. Rather, the question is whether the Commission should issue an *exemption* to these requirements based on the circumstances presented.

Again, the Commission never disputed that it has the power to issue the [redacted] For good reason. The Commission has "broad authority" to "exempt any person from *any* provision of the Exchange Act or *any* rule or regulation thereunder to the extent that such exemption is (i) 'necessary or appropriate in the public interest' and (ii) 'is consistent with the protection of investors.'" Whistleblower

Order, 2022 WL 768309, at *4 & n.16 (Mar. 11, 2022) (emphasis added) (quoting 15 U.S.C. §78mm(a)).

Congress gave the Commission this exemptive authority precisely because there will be situations in which the generally applicable rules will not be in the public interest or be consistent with the protection of investors. "Where any administrative rule, although considered generally to be in the public interest, is not in the public interest as applied to particular facts, an agency should waive application of the rule." *P&R Temmer v. FCC*, 743 F.2d 918, 929 (D.C. Cir. 1984); *see Orange Park Florida TV, Inc. v. FCC*, 811 F.2d 664, 675 (D.C. Cir. 1987) ("[A]ny rule of general applicability will involve particular cases of hardship, for which an agency would be empowered to make individual dispensations.").

The Commission thus couldn't deny an exemption merely on the grounds that it would be "inconsistent" with its rules. *API v. SEC*, 953 F. Supp. 2d 5, 21 (D.D.C. 2013). Yet that is precisely what the Commission did. The Commission's reasoning "ignores the meaning of 'exemption,' which, by definition, is an exclusion or relief from an obligation" and thus always "will be inconsistent with the statutory requirement on which it operates." *Id.* That reasoning was arbitrary and capricious.

**3.** Finally, the Commission asserted—in a single sentence—that granting an exemption would "introduce uncertainty, inconsistency, and could delay the processing of award claims." Order 12-13, JA143-44 (relying on the 2023 Final Order). This reasoning fails for at least two reasons. First, it improperly parrots the 2023 Final Order,

even though that order has no persuasive value here. As explained above, the request in the 2023 Final Order *would* introduce uncertainty, inconsistency, and delay because the claimant was asking the Commission to base the award on "monetary sanctions" that were truly speculative. *Supra* 44. Not so here. [redacted] precise [redacted] already itemized by the Commission in its order and the exact amount [redacted]. The Commission's reasoning thus has no application here.

The Commission's reasoning also fails for a second reason—it is conclusory. A "'fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action.'" *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014). An agency must "explain 'why it chose to do what it did.'" *Id.* To this end, "conclusory statements will not do; an 'agency's statement must be one of *reasoning*.'" *Id.* (emphasis in original); *see Encino Motorcars LLC v. Navarro*, 579 U.S. 211, 224 (2016) ("[C]onclusory statements do not suffice to explain [an agency's] decision.").

The Commission's failure is especially problemati[redacted] explained to the agency why an exemption would not create these problems—again without any response from the Commission. *See* Response to Prelim. Determination 19-20, JA127-28. The Commission's conclusory statement to the contrary cannot suffice as "reasoned decisionmaking." *See Amerijet Int'l*, 753 F.3d at 1350; *Encino Motorcars*, 579 U.S. at 224.

## CONCLUSION

For these reasons, the Court should grant the petition, vacate the order below, and remand with instructions to either grant [redacted] exemption or, alternatively, reconsider [redacted] the proper standard.

Dated: April 13, 2026

Respectfully submitted,

*/s/ J. Michael Connolly*

JORDAN A. THOMAS
SEC Whistleblower Advocates PLLC
3101 Wilson Boulevard, Suite 500
Arlington, VA 22201
(202) 746-9314
JThomas@secadvocates.com

J. MICHAEL CONNOLLY
*Counsel of Record*
STEVEN C. BEGAKIS
MARIE E. SAYER
PETER J. ALLEVATO
Consovoy McCarthy PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
mike@consovoymccarthy.com
steven@consovoymccarthy.com
mari@consovoymccarthy.com
peter@consovoymccarthy.com

*Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE

This brief complies with Local Rule 32.1(a)(4)(A) because it contains 11,929 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: April 13, 2026

*/s/ J. Michael Connolly*

## CERTIFICATE OF SERVICE

I certify that on April 13, 2026, a redacted copy of the foregoing document was served on all parties using the ACMS system; an unredacted copy of the foregoing document was served on all parties by electronic mail.

Dated: April 13, 2026

*/s/ J. Michael Connolly*